# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EDWARD LITTLE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action Number |
| | ) **2:20-CV-01993-AKK** |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Edward Little seeks review of the decision of the Acting Commissioner of the Social Security Administration denying benefits. Doc. 1. Little contends that the Administrative Law Judge's decision is not supported by substantial evidence because the ALJ improperly discounted Little's pain-related testimony, *see* doc. 14 at 5–8, 11, failed to give the opinions of his consultative examiners "significant weight," *id.* at 10, and used his inability to pay for medical care as evidence that his pain was not severe, *id.* at 13. After careful review of these claims, the court concludes that the ALJ's decision is due to be affirmed, as explained fully herein.

**I.**

Little, who previously worked as an inspector-packer at a plastics manufacturer, applied for disability benefits in September 2018 based on pain and limited mobility in his shoulders and muscle spasms in his back. *See* R. 25; R. 34–

35; R. 42.  After the SSA denied his claims, Little and his attorney attended a hearing before an ALJ, who found that Little was not disabled.  *See* R. 25.  The SSA Appeals Council denied review, R. 1, and the ALJ's decision became the decision of the Acting Commissioner.  Little thereafter filed this petition for review.  Doc. 1.

## II.

On review, the court may decide only whether the record contains substantial evidence to support the ALJ's decision and the ALJ applied the correct legal principles.  42 U.S.C. § 405(g); *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).  Courts review de novo the legal conclusions upon which the Commissioner's decision is based, while the Commissioner's factual findings are conclusive if supported by "substantial evidence."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  This threshold "is not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and requires "less than a preponderance," *Moore*, 405 F.3d at 1211.  If substantial evidence supports these findings, the court must affirm, even if the evidence preponderates against them.  *Noble*, 963 F.3d at 1323.

When determining whether substantial evidence exists, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The court also cannot automatically affirm the decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Rather, the court "retain[s] an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

## III.

The Social Security Act "places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work." *Bloodsworth*, 703 F.2d at 1240. Indeed, "[t]his stringent burden has been characterized as bordering on the unrealistic." *Id.* (collecting cases). To qualify for benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). The ALJ must determine, in sequential order:

> (1) whether the claimant is currently unemployed;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals one listed by the Commissioner;
> (4) whether the claimant is unable to perform his or her past work; and
> (5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).[1]

While evaluating the claimant's record, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). In addition, the ALJ will not defer or give any specific weight to any medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a). To determine the persuasiveness of a medical opinion or prior administrative finding in the record, the

---

[1] If a claimant's impairments do not meet or equal a listed impairment, the ALJ determines the claimant's "residual functional capacity" based on "all of the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1520(e). *See also* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). The ALJ uses the residual functional capacity to determine if the claimant can perform past relevant work and, if not, if the claimant can adjust to other work. 20 C.F.R. § 404.1520(e).

ALJ focuses on factors that include supportability,[2] consistency,[3] the medical source's relationship with the claimant,[4] and the medical source's specialization.[5] *Id.* § 404.1520c(c). The most important factors are supportability and consistency, and the ALJ must articulate how persuasive he or she finds the medical opinions and prior findings in the record. *Id.* § 404.1520c(a).

Further, when a claimant provides testimony concerning "pain or other subjective symptoms," the ALJ must determine whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d

---

[2] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

[3] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

[4] This includes the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship (*e.g.*, the kinds of testing performed), and the examining relationship (*i.e.*, whether the medical source actually examined the claimant or only reviewed the claimant's file). *Id.* § 404.1520c(c)(3).

[5] "Specialization" refers to whether the medical source has received "advanced education and training to become a specialist," which may render that source's findings more persuasive. *Id.* § 404.1520c(c)(4). In addition, the ALJ may consider evidence showing that a medical source "has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

1221, 1223 (11th Cir. 1991). If the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce her symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)). The ALJ must consider "all of the record," including objective medical evidence, the claimant's history, and statements by the claimant and the claimant's doctors, and the ALJ may consider factors like the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or symptoms; the type, dosage, effectiveness, and side effects of the claimant's medication; and treatments other than medication. *Id.*

Last, the ALJ must examine the claimant's symptom-related testimony in relation to all of the other evidence, considering whether there are any "inconsistencies or conflicts between those statements and the record." *Id.* If the ALJ subsequently discredits the claimant's testimony, the ALJ must "articulate explicit and adequate reasons for doing so," and the failure to articulate the reasons for discrediting this testimony "requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). In sum, the court "will not disturb a clearly articulated

credibility finding supported by substantial evidence." *Mitchell*, 771 F.3d at 782 (internal citations omitted).

Finally, when evaluating a claimant's mental limitations, the ALJ considers four functional areas to "evaluate how [the claimant's] mental disorder limits [her or his] functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00A(2)(b). These areas are how a claimant (1) "[u]nderstand[s], remember[s], or appl[ies] information"; (2) "interact[s] with others"; (3) "concentrate[s], persist[s], or maintain[s] pace"; and (4) "adapt[s] or manage[s] [himself or herself]." *Id.* To meet or medically equal a listed impairment, the claimant must establish an "extreme" limitation of one or "marked" limitation of two areas. *See id.*

## IV.

In this case, at Step One, the ALJ determined that Little had not engaged in substantial gainful activity since his alleged onset date in 2018. R. 20. At Step Two, the ALJ determined that Little's degenerative disc disease and degenerative joint disease of the left shoulder constituted severe impairments but that his cataracts, basal skin carcinoma, hernia, hip pain, knee pain, and hearing loss did not. R. 20–21. The ALJ also found that Little's alcohol use, remote polysubstance use, and impulse control disorder "[did] not cause more than minimal limitation in [his] ability to perform basic mental work activities and [were] therefore nonsevere."

R. 21.  In reaching this conclusion, the ALJ evaluated Little's four mental-health functional areas as follows.

First, the ALJ determined that Little had a mild limitation in understanding, remembering, or applying information.  *Id.*  The ALJ noted that in Little's function report, Little stated that "he sometimes forgot to take his vitamins but . . did not need reminders for personal care or appointments. . . . [and] that he was able to follow instructions if they were not too hard or difficult to remember."  *Id.*; R. 225–28.  The ALJ also cited a consultative mental examination from February 2019 that indicated Little's "recent and remote memory was intact and [that he] recalled three of four words after a five-minute delay. . . [and could] provide information about his personal history and health to medical providers and Social Security."  R. 21; R. 254.

Next, the ALJ determined that Little had a mild limitation in interacting with others.  *Id.*  The ALJ again cited Little's self-report, in which he indicated he "generally stayed at home" but interacted with friends at least monthly, got along with authority figures and medical providers, and had never lost a job due to problems with others.  R. 21–22; R. 227–29.

The ALJ then determined that Little had a mild limitation in concentrating, persisting, or maintaining pace.  R. 22.  Looking to Little's self-report, the ALJ noted that Little reported "difficulty concentrating and completing tasks, but he stated that he was able to watch television, shop for groceries and household items, manage

money, and drive." *Id.*; R. 221; R. 225–27. Turning to a consultative psychologist report, the ALJ summarized that "[Little's] concentration and attention were average" and that he could "handle his own limited medical care." R. 22; R. 254. As a result, the ALJ concluded that Little could "focus attention and stay on task at a sustained rate." R. 22.

Finally, the ALJ determined that Little had a mild limitation in adapting or managing himself. *Id.* The ALJ cited Little's self-report, in which he stated he could "perform personal care without reminders" and "reported some difficulty handling stress and changes." *Id.*; R. 225–29. The ALJ noted that Little had not had any mental health treatment and that "[t]here [was] no evidence of anger episodes or altercations . . . or problems interacting with medical providers." R. 22; R. 253–54.

Because the ALJ determined that Little did not have two marked limitations or one extreme limitation and that Little's physical impairments did not meet or equal a listed impairment, the ALJ proceeded to Step Four to determine Little's residual functional capacity. *See id.* At this step, relevant to Little's arguments on appeal, the ALJ evaluated Little's testimony about his pain-related symptoms, summarizing Little's testimony as follows:

> [Little] initially alleged that he was disabled by rotator cuff problems, hip and knee pain, and a hernia. He testified that he has limited use of his left arm; he cannot reach with or raise his right arm; and he has muscle spasms in his back, which occur daily. He testified that his pain increases to approximately level 8 on a 10-point scale when he tries to use his arms or lies on his shoulders and he has difficulty sleeping. [He]

9

>  testified that he can carry five to ten pounds, walk approximately half a block, and perform household chores in increments. He stated that he is on his feet only a few hours per day and he lies on the couch the remainder of the day. [He] testified that he does not have health insurance.

R. 23. Little does not dispute the accuracy of this summary. Doc. 14 at 4.

Although the ALJ found that Little's impairments "could reasonably be expected to cause some of the alleged symptoms," the ALJ determined that Little's statements about "the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the . . . evidence in the record." *Id.* Here, the ALJ turned to a consultative physical examination Little attended in December 2018 that demonstrated "reduced flexion in [his] lumbar spine," a positive "straight-leg raising test," a "swift and steady" gait, and "normal" posture. *Id.*; R. 257–64. The ALJ stated that Little exhibited "reduced abduction in his bilateral shoulders and reduced muscle and grip strength, but there was no evidence of atrophy." R. 23; R. 264. In addition, the ALJ noted that X-rays from February 2019 "showed mild to moderate degenerative changes in [Little's] lumbar spine, but [X]-rays of his shoulders and pelvis were normal." *Id.*; R. 266. Turning to Little's mental health evaluation, the ALJ noted that the examiner "diagnosed [Little] with polysubstance use in sustained remission and alcohol use disorder in sustained partial remission" and "found that [he] had no psychological issues, cognitive impairments, or current substance abuse issues that prevented him from working." R. 24; R. 255.

The ALJ then moved to records from 2019.  The ALJ noted that Little "ha[d] been receiving treatment at Cooper Green Mercy Health Services, which offers medical care on a sliding fee schedule and regardless of ability to pay."  R. 24.  Records from Little's visits to Cooper Green noted his "chronic pain to both shoulders," R. 281, which X-rays confirmed, *see* R. 276.  The ALJ noted that Little then began occupational therapy, which improved his shoulder pain and motion.  *See* R. 24; R. 272–74.  Summarizing this evidence, the ALJ concluded that despite Little's physical limitations, "imaging show[ed] that [Little's] back impairment [was] moderate, at most, and his shoulder pain decreased to mild with occupational therapy."  R. 24.  Accordingly, the ALJ determined that the medical evidence did not support the severe limitations in daily living that Little reported, and the ALJ consequently discounted Little's pain-related testimony.  *Id.*

The ALJ proceeded to review more pointedly the three reports in the record: from the 2018 consultative examiner, from a January 2019 state-agency psychiatrist, and from a February 2019 state-agency physician.  *See id.*  The ALJ found the 2018 consultative examiner's statements about Little's mental impairments "somewhat persuasive" but discounted her statements about his physical impairments because "they appear[ed] to be based entirely on [Little's] reporting and [were] not supported by imaging, physical examinations, or treatment notes" and were thus "outside her purview."  *Id.*  As to the January 2019 psychiatrist, who found that Little "had a

nonsevere impulse control disorder that caused only mild limitations in mental functioning," the ALJ deemed this opinion "persuasive" because "it [was] supported by an analysis and consistent with the [2018] consultative mental examination." *Id.* As to the February 2019 physician, who found "[Little] capable of performing a restricted range of medium exertion," the ALJ deemed this opinion "not persuasive" because imaging in 2019 "show[ed] only mild lumbar changes," and physical therapy during this time period "greatly reduced [Little's] shoulder pain." *Id.*

Following review "of the evidence of record, including [Little's] allegations and testimony, forms completed at the request of Social Security, the objective medical findings, the medical opinions, and other relevant evidence," the ALJ concluded that Little's residual functional capacity did not need to include "nonexertional limitations." R. 24–25. The ALJ found that Little "[had] the residual functional capacity to perform the full range of medium work." R. 22. Using this residual functional capacity and a vocational expert's testimony, the ALJ concluded that Little could perform his past work as an inspector-packer, a light, unskilled job that Little previously performed at a medium level of exertion. R. 25. As a result, the ALJ found Little not disabled. *Id.*

## V.

Little challenges the ALJ's decision as unsupported by substantial evidence on three grounds. First, Little contends that the ALJ improperly discounted Little's

testimony about his pain by selectively quoting notes from his medical records. *See* doc. 14 at 5–8, 11.  In addition, Little argues that the ALJ failed to give the opinions of his consultative examiners "significant weight." *Id.* at 10.  Last, Little asserts that the ALJ used his inability to pay for medical care as evidence that his pain was not severe. *Id.* at 13.  The court takes these arguments in turn.

A.

Little first asserts that the ALJ misapplied the test for considering his pain-related testimony and essentially cherry-picked certain "isolated" notes from the record that superficially undermine the testimony. *See* doc. 14 at 6–8.  As noted, Little testified that he had very limited overhead use of his arms and sharp muscle pain and spasms in his back, *see* R. 34–35, and that he had no trouble sitting and could stay on his feet a few hours each day, *see* R. 36.  *See also* doc. 14 at 6.  Little also testified that his largest problem with his past work was the "fast-paced production" that required him to lift heavy weights above his head while on his feet for 12 hours daily.  *See* R. 39.  Little agrees that the ALJ accurately summarized this testimony in the written decision.  Doc. 14 at 4; R. 23.

In discounting this testimony, the ALJ explained that the medical evidence in the record—particularly more recent X-rays and notes regarding Little's physical therapy—indicated "consistent improvement," a reduction in pain, and moderate physical impairments. *See* R. 24.  On review of the records cited by the ALJ, the

court finds that the ALJ accurately summarized these medical visits. While Little complained of shoulder and back pain at his medical visits, Little also reported improvement and lessening pain with therapy. *See* R. 262–66; R. 271–77; R. 281–82; R. 290. Little agrees that the records show that his "arthritic pain . . . greatly improved" and that his "shoulder pain improved with therapy." Doc. 14 at 11. Because the ALJ specifically described why "the medical evidence [did] not support the severe limitations in activities of daily living reported by [Little]," R. 24, and substantial evidence supports the ALJ's decision to discount Little's testimony, the court cannot disturb the ALJ's factual finding. *See Mitchell*, 771 F.3d at 782.

B.

Little also argues that the opinions of his consultative examiners should have received "significant weight" in the ALJ's analysis. *See* doc. 14 at 10. In particular, Little contends that the ALJ inappropriately deemed the examiners' reports of his physical impairments not persuasive although the examiners' statements were consistent with Little's testimony and the evidence and the examiners personally observed him. *See id.* However, reviewing the ALJ's reasoning, the court finds that the ALJ's findings were again supported by substantial evidence.

An ALJ will not give specific weight, including controlling weight, to a prior medical opinion and instead considers the opinion's supportability and consistency to determine its persuasiveness. 20 C.F.R. §§ 404.1520c(a)-(c). In this case, the

14

ALJ discounted portions of the 2018 examiner's report that evaluated Little's physical impairments because "they appear[ed] to be based entirely on [Little's] reporting and [were] not supported by imaging, physical examinations, or treatment notes." R. 24.  And the ALJ discounted the 2019 physician's assessment "because imaging show[ed] only mild lumbar changes[,] and occupational therapy greatly reduced [Little's] shoulder pain."  *Id.*  Because the ALJ properly relied on differences between these opinions and the objective evidence, including X-rays and therapy/treatment notes, to discount the opinions, the ALJ's decision not to give them more significant weight was supported by substantial evidence.

## C.

Finally, the record belies Little's claim that the ALJ inappropriately used his inability to afford medical care as proof his pain was not severe.  It is true the ALJ could not deny Little benefits based on Little's inability to afford and thus comply with treatment.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213–14 (11th Cir. 1998).  If the ALJ had concluded that Little did not suffer from severe pain primarily because he had not sought enough medical care, without probing Little's reasons, this would constitute reversible error.  *See id.*  However, the court agrees with the SSA that "[t]he ALJ's analysis does not suggest the ALJ relied on [Little's] limited treatment as a basis for his subjective symptom finding."  Doc. 15 at 9.  The ALJ mentioned Little's limited medical record without further comment and remarked

15

that Little had "receiv[ed] treatment at Cooper Green Mercy Health Services, which offers medical care on a sliding fee schedule and regardless of ability to pay." R. 24. Further, the ALJ compared Little's self-report and hearing testimony with the medical records, including treatment notes and imaging, to determine the extent of Little's pain without emphasis on the frequency of his care. Little's claim regarding the ALJ's reliance on his limited medical care thus unfortunately lacks merit.

## VI.

In closing, the court acknowledges Little's testimony about the limiting effects of his pain. However, because the ALJ's decision is supported by substantial evidence, the court must affirm. A separate order effectuating this opinion follows.

**DONE** the 25th day of January, 2022.

*[signature]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE